UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MANGOCEUTICALS, INC., § | |
| § | |
| Plaintiff/Counter Defendant, § | |
| § | |
| v. § | CIVIL ACTION NO. 3:24-CV-3116-B |
| § | |
| ACCELERATED DIGITAL MEDIA, § | |
| LLC, § | |
| § | |
| Defendant/Counter Claimant. § | |

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant Accelerated Digital Media, LLC (ADM)'s Motion to Transfer (Doc. 35). For the following reasons, the Court **GRANTS** the Motion and directs the Clerk of Court to **TRANSFER** this action to the U.S. District Court for the Northern District of Illinois.

## I.

## BACKGROUND

This lawsuit arises out of a "Master Services Agreement" (the "MSA") between ADM and Plaintiff Mangoceuticals, Inc. ("Mango"), under which ADM provided certain digital marketing services to Mango in 2023. Doc. 32, Second Am. Compl. ¶ 6. Relevant here, the MSA contains choice of law and forum selection provisions, which state in relevant part:

> The rights and obligations of the parties under this Agreement shall be governed by the laws of the State of Illinois, without reference to conflict of law principles. Any legal suit, action or proceeding arising out of or relating to this Agreement shall be commenced in the federal or state courts in the County of Cook, Illinois, and each Party hereto irrevocably submits to the exclusive jurisdiction and venue of any such court in any such suit, action or proceeding.

Doc. 35-1, MSA ¶ 10.

Mango filed suit against ADM in Texas state court in December 2024. *See* Doc. 1-2, Pet., 1. ADM then promptly removed the state action to this Court. *See* Doc. 1, Notice. In its Complaint, Mango alleges that prior to the MSA's execution, ADM made a variety of false or misleading representations as to its own expertise and experience in the digital marketing space. Doc. 32, Second Am. Compl. ¶ 7. Then, because ADM was not actually proficient to undertake its obligations under the MSA, ADM allegedly made a variety of errors that significantly affected Mango's ability to market its products and harmed Mango's market position. *See id.* ¶¶ 10-14. Mango asserts claims against ADM for breach of contract, fraudulent inducement, fraud, negligent misrepresentation, negligence, and a declaratory judgment to void the MSA. *See id.* ¶¶ 15-29.

Now, pursuant to 28 U.S.C. § 1404(a) and the MSA's forum selection clause (the "FSC"), ADM moves the Court to transfer this action to the United States District Court for the Northern District of Illinois. *See* Doc. 35, Mot. The Court considers the Motion below.

## II.

## LEGAL STANDARD

The legal framework for enforcing forum selection clauses is drawn primarily from the Supreme Court's decision in *Atlantic Marine*. *See Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 766 (5th Cir. 2016) (citing *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013). There, the Supreme Court held that the proper method of enforcement is through a motion to transfer under § 1404(a), and that the § 1404(a) analysis must be modified where there is a valid, enforceable forum selection clause. *Atl. Marine*, 571 U.S. at 59, 62-63. Accordingly, this Court must consider whether the FSC is mandatory, enforceable, and applicable to the causes of action presented in this case, before analyzing the Motion under § 1404(a).

## III.

## ANALYSIS

First, the Court determines that Illinois substantive law applies to questions of the FSC's interpretation, and federal law applies to questions of its enforceability. Second, the Court finds that the FSC is mandatory. Third, the Court finds that the FSC is enforceable. Fourth, the Court finds that the FSC's scope covers all causes of action presented. And fifth, the Court finds that § 1404(a) does not otherwise preclude transfer. Accordingly, the Court **GRANTS** ADM's Motion to Transfer.

A.  *Illinois Law Applies to Questions of the FSC's Interpretation, and Federal Law Applies to Questions of the FSC's Enforceability*

"A federal court sitting in diversity applies the forum state's choice-of-law rules to determine which substantive law will apply." *Weber*, 811 F.3d at 770. The applicable substantive law then governs the forum selection clause's meaning (including scope) and whether it is mandatory or permissive. *See id.* at 769-70. The Court will therefore apply the choice-of-law rules of Texas, the forum state here, to determine the applicable substantive law.

Texas follows the Restatement (Second) of Conflict of Laws ("Second Restatement"). *Maxus Expl. Co. v. Moran Bros., Inc.*, 817 S.W.2d 50, 53 (Tex. 1991). Under section 187 of the Second Restatement, "the contracting parties' choice of law will be respected 'if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.'" *In re J.D. Edwards World Sols. Co.*, 87 S.W.3d 546, 549 (Tex. 2002) (quoting Second Restatement § 187(1)) (citation modified). And even if the particular issue could not have been resolved by an explicit provision in their agreement, the parties' choice of law will still be given effect unless either (1) there is no substantial relationship to the chosen state or reasonable basis for the

parties' choice, or (2) applying the chosen state's law is contrary to a fundamental policy of the state that has the most significant relationship with the parties. *See* Second Restatement § 187(2).

The MSA provides that "[t]he rights and obligations of the parties under this Agreement shall be governed by the laws of the State of Illinois." Doc. 35-1, MSA ¶ 10. The Parties are in consensus that even if the issues presented in this case could not have been resolved by an explicit provision of the MSA, Illinois law should still govern. *See* Doc. 37, Resp., 10; Doc. 39, Reply, 2. The Court agrees. ADM's sole member, Tellef Lundevall, is, or was, a citizen of Illinois at the time of removal. Doc. 1, Notice, 3. So there is a reasonable basis for the Parties' choice. *See* Second Restatement § 187(2). And even assuming, *arguendo*, that Texas is the state with the most significant relationship, neither party asserts a fundamental Texas policy that would be contravened in the application of Illinois law here. As such, Texas choice-of-law rules require this Court to apply Illinois substantive to interpret the FSC. *See Weber*, 811 F.3d at 770.

Unlike questions of interpretation, the FSC's enforceability—which is analytically distinct from issues of interpretation—is governed by federal law. *Id.* at 770. As such, the Court will apply Illinois substantive law to issues of interpretation and federal law to issues of enforcement.

B.   *The FSC is Mandatory on its Face*

"Only mandatory [forum selection] clauses justify transfer or dismissal." *Id.* at 768. Whether the FSC is mandatory is a question of interpretation governed by Illinois substantive law. *See id.* at 769-70. Under Illinois law, when the term "shall" is used in a forum selection clause, the clause is mandatory. *Calanca v. D & S Mfg. Co.*, 510 N.E.2d 21, 22-23 (Ill. App. Ct. 1987); *see BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 554 (7th Cir. 2002) (holding that arbitrator was not free to apply

law of other state where a forum selection clause stated "shall" because no "imaginable" interpretation of the clause would have authorized such discretion).

Here, the FSC is mandatory on its face because it states that "[a]ny legal suit, action or proceeding arising out of or relating to this Agreement *shall* be commenced in the federal or state courts in the County of Cook, Illinois, and each Party hereto irrevocably submits to the *exclusive jurisdiction* and venue of any such court in any such suit, action or proceeding." Doc. 35-1, MSA ¶ 10 (emphases added).

C. *The FSC is Enforceable*

In the federal court system, a forum selection clause's enforceability, unlike its interpretation, is governed by federal law. *See Weber*, 811 F.3d at 770. The Fifth Circuit "applies a strong presumption in favor of the enforcement of mandatory [forum selection clauses]." *Id.* at 773 (citing *Haynsworth v. The Corp.*, 121 F.3d 956, 962-63 (5th Cir. 1997)). To overcome that presumption, the party seeking to avoid enforcement must demonstrate that the clause is "unreasonable." *Id.*

When analyzing whether a forum selection clause is unreasonable, the court asks (1) whether the "incorporation of the forum selection clause into the agreement was the product of fraud or overreaching," (2) whether the party opposing enforcement "will for all practical purposes be deprived of his day in court" due to inconvenience or unfairness in the selected forum, (3) whether as a matter of "fundamental fairness" the chosen law would deprive the plaintiff of a remedy, and (4) whether "enforcement of the forum selection clause would contravene a strong public policy of the forum state." *Haynsworth*, 121 F.3d at 963 (citation modified). Mango argues that the FSC is unreasonable, and rests its argument on the first, second, and fourth considerations. *See* Doc. 37, Resp., 5-8. The Court will address each argument in turn.

1. <u>Whether the FSC's Incorporation Was the Product of Fraud</u>

Under the first unreasonableness factor, the "fraud" at issue must be specific to the forum selection clause. *Haynsworth*, 121 F.3d at 963. In other words, general allegations that "the contract as a whole" was procured by fraud—not that the forum selection clause itself was included by fraud—"are insufficient." *Id.*

Mango claims it was induced by ADM's false representations regarding ADM's own expertise and experience to sign the MSA, and thus the FSC was the product of fraud. Doc. 37, Resp., 5. To try to get around *Hanysworth*'s clear requirement that the alleged fraud be specific to the inclusion of the forum selection clause—and not the contract as a whole, *see* 121 F.3d at 963—Mango claims that ADM's representations meant they had less bargaining power in contract negotiations through which they could have obtained a different forum selection clause. Doc. 37, Resp., 5-6. This argument is unavailing. Mango's general claim that ADM's misrepresentations regarding its expertise in digital marketing limited Mango's bargaining power is still not "specific to [the FSC]," *see Haynsworth*, 121 F.3d at 963, because that claim could easily be applied to any provision in the entire MSA. Mango asserts no basis for this Court to assume that the alleged misrepresentations uniquely affected the FSC as compared with other substantive provisions. Therefore, Mango's fraud argument fails.

2. <u>Whether the FSC Would Deprive Mango of Its Day in Court</u>

As for the second unreasonableness factor, "when parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Noble House, L.L.C. v. Certain Underwriters at Lloyd's, London*, 67 F.4th 243, 251 (5th Cir. 2023) (citation modified) (internal citation

omitted). This is because "[a]ny grave inconvenience or unfairness of the selected forum [a party] would suffer by being forced to litigate in the contractual forum as it agreed to do was clearly foreseeable at the time of contracting." *Id.* (citation and internal quotation marks omitted).

Mango claims it would be deprived of its day in court if required to litigate in Illinois. Doc. 37, Resp., 6-8. Specifically, Mango claims it did not "foresee" that any dispute over the MSA would be litigated in Illinois, and that it would be "extremely prejudiced" because certain "essential testifying witnesses" are located in Texas and may not be able to testify in Illinois. *Id.* at 7-8. Not so. First, Mango is "presumed to have read the contract to which it agreed," so it cannot suddenly claim it could not have anticipated litigation in a forum plainly specified in the MSA. *See Noble House*, 67 F.4th at 251. And second, because Mango agreed to the MSA (whether or not it was fraudulently induced to do so), it "waive[s] the right to challenge [Illinois] as inconvenient . . . for . . . [its] witnesses[.]" *Id.* Thus, Mango's second unreasonableness argument also fails.

3. <u>Whether Enforcing the FSC Would Contravene a Strong Policy of the Forum State</u>

Invoking the fourth unreasonableness factor, Mango summarily claims that enforcement of the FSC would contravene Texas' "strong public policy" of protecting its citizens. Doc. 37, Resp., 8. While all states have a strong public policy regarding the protection of their citizens, this is not the type of "public policy" contemplated by *Haynsworth*. Were it so, any citizen of any state would have an argument against the enforcement of every forum selection clause he or she contracted into if the clause selected a state where the citizen does not reside. *See Weber*, 811 F.3d at 776 (noting that states' individual interests in "protecting their own citizens are implicated in *every* case"). Given Texas' other "strong public policy in favor of preserving freedom of contract" and "contract enforcement," Mango's sweeping argument cannot stand. *See Fairfield Ins. Co. v. Stephens Martin*

*Paving, LP*, 246 S.W.3d 653, 664 (Tex. 2008); *Ipsen Biopharm Ltd. v. Galderma Labs., L.P.*, 660 F. Supp. 3d 538, 553 (N.D. Tex. 2023) (O'Connor, J.) ("[I]t does not contravene Texas public policy to hold [contracting parties] to their word by enforcing the forum-selection clause they negotiated."). Therefore, Margo's public policy argument similarly fails.

Mango has not shown that the FSC is unreasonable and thus did not rebut the FSC's presumption of enforceability. As such, the FSC is enforceable. *See Weber*, 811 F.3d at 773.

D.    *The FSC's Scope is Broad Enough to Encompass All of Mango's Claims*

The Court interprets the scope of the FSC in accordance with Illinois substantive law. *See Weber*, 811 F.3d at 770 (holding that state substantive law governs the interpretation of forum selection clauses).

"The primary goal of contract interpretation is to give effect to the parties' intent in entering the contract." *Eckhardt v. Idea Factory, LLC*, 193 N.E.3d 182, 190 (Ill. App. Ct. 2021) (citing *Kasper v. McGill Mgmt. Inc.*, 130 N.E.3d 15, 25 (Ill. App. Ct. 2019)). "[C]ontracts are interpreted objectively and must be construed in accordance with the ordinary expectations of reasonable people." *Suburban Auto Rebuilders, Inc. v. Associated Tile Dealers Warehouse, Inc.*, 902 N.E.2d 1178, 1190 (Ill. App. Ct. 2009) (citation omitted). In interpreting the scope of a forum selection clause, Illinois courts thus "seek to honor the reasonable expectations of the parties to the contract." *Eckhardt*, 193 N.E.3d at 191 (citation omitted).

A forum selection clause that uses broad language may include within its scope non-contractual claims, even if those claims are only loosely related to the contract itself. *See Solargenix Energy, LLC v. Acciona, S.A.*, 17 N.E.3d 171, 185-86 (Ill. App. Ct. 2014) (finding that a broad forum selection clause covering "any actions, claims, disputes or proceedings relating to this Agreement"

necessarily included claims for breach, fraudulent inducement, tortious interference, and unjust enrichment); *see also* John F. Coyle, *Interpreting Forum Selection Clauses*, 104 Iowa L. Rev. 1791, 1803-04 (2019) (explaining that terms like "related to" or "in connection with" are "clearly broad enough to cover non-contractual claims").[1] In contrast, when "generic" forum selection clauses do not utilize that broad language, "courts have generally assumed an intent that only disputes *arising under* the contract are subject to the forum selection clause." *Eckhardt*, 193 N.E.3d at 191 (emphasis added) (internal quotations and citation omitted).

But even when a generic forum selection clause lacks any signal as to its scope over non-contractual claims, Illinois courts do not assume the clause's scope "was necessarily limited solely to claims for breach of the agreement." *Id.* at 191. Even generic clauses, absent specific limiting language, encompass "noncontractual claims 'arising under' the contract." *Id.* (citing *Hansa Consult of N. Am., LLC v. Hansaconsult Ingenieurgesellschaft mbH*, 35 A.3d 587, 593 (N.H. 2011)). In *Eckhardt*, the court noted that because the clause at issue lacked both extending or limiting language, it was generic and therefore included both contractual claims and non-contractual claims "arising under" the contract. *Id.* at 190-92.

For a noncontractual claim to "arise under" a generic forum selection clause, the Court considers whether "the same operative facts of a noncontractual claim would be cognizable as a breach of the contract." *Id.* at 193. "A tort claim involves the same operative facts as a parallel claim for breach of contract when '[t]he same exact facts surrounding [the plaintiff's] tort claims would also give rise to a breach of contract claim.'" *Id.* (citation omitted). The *Eckhardt* court found that

---

[1] The Illinois Court of Appeals cites Coyle's article favorably for other, related propositions in *Eckhardt* itself. *See* 193 N.E.3d at 190.

the plaintiff's defamation and intentional infliction of emotional distress claims involved the same operative facts of a parallel claim for breach of contract and were thus covered by the clause. *Id.* at 193-94. The court also noted that even a generic forum selection clause could "encompass a plaintiff's fraudulent inducement claim." *Id.* at 192 (citing *Kochert v. Adagen Med. Int'l, Inc.*, 491 F.3d 674, 679-80 (7th Cir. 2007).

Mango asserts six causes of action in its amended complaint: breach of contract, fraudulent inducement, fraud, negligent misrepresentation, negligence, and a request for declaratory judgment that the contract is void for fraudulent inducement. *See* Doc. 32, Second Am. Compl. ¶¶ 15-29. Only the first, breach of contract, is plainly a contractual claim. *See id.* ¶ 15. The others, while framed as torts or requests for declaratory judgment, all arose out of the Parties' business relationship that is governed by the MSA. *See id.* ¶¶ 15-29. Both parties devote much of their arguments to whether each cause of action "arose under" the contract in application of *Eckhardt*'s "same operative facts" analysis for generic forum selection clauses. *See* Doc. 35, Mot., 10-11; Doc. 37, Resp., 11-14. However, the Court need not address these arguments because the FSC is broad, not generic, and its expansive language sufficiently covers each of Mango's claims.

The FSC states that "[a]ny legal suit, action or proceeding *arising out of or relating to* this Agreement shall be commenced in the federal or state courts in the County of Cook, Illinois . . . ." Doc. 35-1, MSA ¶ 10 (emphasis added). This language is precisely the type of "expanding," non-generic language identified by Illinois courts that enables a forum selection clause to broadly cover non-contractual claims. *See Eckhardt*, 193 N.E.3d at 190 (noting lack of phrases such as "arising out of" or "related to" that could expand scope of clause to determine that it was generic, rather than broad); *Solargenix*, 17 N.E.3d at 185-86 (finding that clause covered non-contractual claims because

it covered "any actions . . . relating to" the agreement); *see also* Coyle, *supra*, at 1804 (identifying term "related to" as "clearly broad enough to cover non-contractual claims").

In applying the FSC's broad language, the Court is also informed by the manner in which Illinois courts interpret the scope of arbitration clauses. "Arbitration clauses applying to disputes 'relating to or arising from' a contract are given broader meaning than those governing disputes 'in connection with' a contract." *State Farm Mut. Auto. Ins. Co. v. George Hyman Constr. Co.*, 715 N.E.2d 749, 756 (Ill. App. Ct. 1999) (citation omitted). Specifically, such clauses are read to "send all matters *relating to the subject matter of the contract* to arbitration." *Id.* (citations omitted) (emphasis added). Thus, in determining whether Mango's causes of action are covered by the FSC, the Court considers whether each relates to the MSA's subject matter—that being the Parties' digital marketing business relationship.

Mango's fraudulent inducement claim and request for declaratory judgment both "arise out of" or are "related to" the MSA because both are based on ADM's alleged misrepresentations as to its expertise and experience in the services they contracted to perform under the MSA. *See* Doc. 32, Second Am. Compl. ¶¶ 17, 27. *Solargenix* held exactly that. *See* 17 N.E.3d at 185-86 ("relating to" language in forum selection clause held sufficient to cover fraudulent inducement). Moreover, Illinois courts have suggested that even a more generic forum selection clause would cover fraudulent inducement. *See Eckhardt*, 193 N.E.3d at 191 (citing *Kochert*, 491 F.3d at 679). Were the Court to find otherwise, any party to a contract could avoid a forum selection clause in a breach of contract

-11-

case merely by asserting a generalized claim for fraud in the inducement. That result would be strange in light of Illinois courts' focus on respecting the reasonable expectations of the parties.[2]

Mango's other claims also relate to the subject matter of the MSA. Mango's fraud and negligent misrepresentation claims "arise out of" or "relate to" the MSA, as both allege misrepresentations by ADM, made in the course of the Parties' contractual relationship, as to ADM's success in carrying out its contractual duties. *See* Doc. 32, Second Am. Compl. ¶¶ 19-23. Mango's negligence claim also "arises out of" or "relates to" the MSA because the duty ADM allegedly breached arises out of the MSA itself, and to the extent separate duties can be derived from Mango's allegations, they nevertheless stem from ADM's performance under the MSA. *See id.* ¶¶ 24-26.

Illinois courts interpret forum selection clauses in accordance with the "ordinary expectations of reasonable people." *See Suburban Auto*, 902 N.E.2d at 1190. Because each of Mango's causes of action—viewed in terms of a reasonable person's ordinary expectations—arise out of or relate to the MSA, they are all within the scope of the FSC.

E.  *Section 1404(a) Does Not Otherwise Preclude Transfer of this Case*

Finding the FSC to be mandatory, enforceable, and broad enough to cover all asserted claims, the Court must consider whether there is any other basis not to transfer this case. Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought

---

[2] The Court is also persuaded by the general principles set forth in *Haynsworth* that fraud allegations are insufficient to challenge enforceability of a forum selection clause unless the fraud is specific to the clause itself. *See* 121 F.3d at 963. Similarly, an argument that fraudulent inducement should not be covered by a forum selection clause is unpersuasive where the alleged inducement has nothing to do with the agreement's selected forum. For instance, a claim for fraudulent inducement that alleges a misrepresentation *as to the forum where potential litigation would be resolved* could have presented a harder case because that claim would be less "related to" the general agreement and more to the alleged misrepresentation.

or to any district or division to which all parties have consented." From § 1404(a), federal courts have developed a list of public and private factors to determine whether a case can be transferred. However, the Supreme Court has made clear that private interest factors are not considered where there is a valid forum selection clause. *Atl. Marine*, 571 U.S. at 64. And the party defying a valid forum selection clause "bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* at 63. Thus, this Court need only consider "whether this is one of the rare cases in which the public-interest [forum non conveniens] factors favor keeping a case despite the existence of a valid and enforceable [forum selection clause]." *Weber*, 811 F.3d at 775-76.

> There are five public-interest factors:
>
> [i] administrative difficulties flowing from court congestion; [ii] the local interest in having localized controversies resolved at home; [iii] the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; [iv] the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and [v] the unfairness of burdening citizens in an unrelated forum with jury duty.

*Id.* at 776 (citation omitted). And they only outweigh a valid forum selection clause "in truly extraordinary cases." *Id.*

Mango acknowledges that the public-interest factors "may not overwhelmingly weigh in favor" of the case remaining in this Court. Doc. 37, Resp., 19. Mango merely claims that "Texas has a greater local interest in resolving this dispute" because Mango is a Texas company, potential third-party witnesses reside in Texas, and Mango asserts Texas common law tort claims, Texas has a greater local interest in resolving this dispute. *Id.* at 18-19. But a single factor purportedly weighing in favor of Texas is insufficient to demonstrate that this is a "truly extraordinary case[]" warranting transfer.

*Weber*, 811 F.3d at 776. Thus, Mango's arguments are not sufficient to demonstrate that § 1404 requires this Court to ignore a valid forum selection clause and retain this action.

## IV.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** ADM's Motion (Doc. 35). The Court directs the Clerk of Court to **TRANSFER** this case to the U.S. District Court for the Northern District of Illinois.

**SO ORDERED.**

**SIGNED: October 22, 2025**.

_____
JANE J. BOYLE
SENIOR UNITED STATES DISTRICT JUDGE